**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
CHERYL MITCHELL,

                       Plaintiff,

    - against -

A&A MAINTENANCE CALIFORNIA, INC. d/b/a
A&A MAINTENANCE and ROOSEVELT CRUZ,
*Individually*,

                       Defendants.
-----------------------------------------------------------------X

Case No.:

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

      Plaintiff, by her attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA"); the New York State Human Rights Law, New York State Executive Law § 296 ("NYSHRL");   and the New York City Human Rights Law, New York City Administrative Code § 8-107, *et seq*. ("NYCHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being **Discriminated Against by Defendants Due to her Disability (Cancer), Denied her Request for a Reasonable Accommodation, and Retaliated Against for Requesting an Accommodation and due to her Disability, Resulting in her Unlawful Termination.**

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12101 *et seq*., 29 U.S.C. § 2617 *et seq*., and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims Plaintiff brings under state and

4.     city law pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated August 28, 2018, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7. This Action is being commenced within 90 days of receipt of said Right to Sue Notice.

## PARTIES

8. Plaintiff CHERYL MITCHELL ("MITCHELL"), is a resident of the State of New York and County of Kings.

9. That at all times relevant hereto, Defendant A&A MAINTENANCE CALIFORNIA, INC. d/b/a A&A MAINTENANCE ("A&A") was and is a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York doing business in New York, with its principal place of business located at 965 Midland Avenue, Yonkers, New York 10705 (the "Main Office").

10. In or about September 2015, Long Island University ("LIU") contracted the services of Defendant A&A to provide maintenance and janitorial support at their school located at 1 University Plaza, Brooklyn, New York 11201 (the "School").

11. At all times material, Plaintiff was an employee of Defendant A&A working as a Porter/Janitor.

12. At all times material, Defendant ROOSEVELT CRUZ ("CRUZ") was and is an employee and manager of Defendant A&A holding the position of "Director."

13. At all times material, Defendant CRUZ was Plaintiff's supervisor and/or held supervisory authority over Plaintiff. Defendant CRUZ had the authority to hire, terminate and/or affect the terms and conditions of Plaintiff's employment.

14. Defendant A&A and Defendant CRUZ are hereinafter referred to as Defendants.

## MATERIAL FACTS

15. In or around 2006, Plaintiff was first hired by LIU as a Porter/Janitor to work in the School and provide janitorial services. Plaintiff was initially compensated approximately $17 per hour and worked at least forty (40) hours per week, often working overtime.

16. Throughout Plaintiff's tenure as an employee of LIU, Plaintiff was always an exemplary employee and received praise for her work performance.

17. Throughout nearly the entirety of Plaintiff's employment at LIU and by Defendant A&A, Plaintiff was a 32BJ SEIU Union Member.

18. In or around September 2015, Defendant A&A was contracted by LIU to manage maintenance and janitorial staff at the School, and Defendant A&A became Plaintiff's new employer.

19. At that time, Plaintiff's managers were "Bob Francis" who was previously a nighttime supervisor of the janitorial staff at LIU, "Sheldon" who was another "Director," and "Eric," who was a "Lead Manager," and had just begun working at LIU when Defendant A&A commenced its contract with the school in approximately 2015.

20. In approximately 2015, when Defendant A&A began to control the terms and conditions of Plaintiff's employment, Plaintiff's job duties did not change substantially, however, she

began to work fewer overtime hours.

21. Unfortunately, in or around August 2017, Plaintiff began to feel that her health was deteriorating. However, she continued to work hard as she always had.

22. Then, in or around September 2017, Plaintiff was diagnosed with cancer.

23. In or around September 2017, Plaintiff made an application for leave pursuant to the Family and Medical Leave Act ("FMLA") and was granted approximately twelve (12) weeks of job-protected leave.

24. Plaintiff's disability – cancer, is an impairment that substantially limits one or more of her major life activities within the meaning of § 12102(1)(A) of the ADA, including but not limited to, normal cell growth.

25. On or about September 29, 2017, Plaintiff began cancer treatment and underwent surgery at Memorial Sloan Kettering Cancer Center.

26. On or about October 7, 2017, Plaintiff began chemotherapy and radiation treatment which lasted approximately thirty (30) days.

27. Around approximately December 22, 2017, Plaintiff was due to return to work from her FMLA leave, however, she was having a very difficult recovery from the cancer treatment. Plaintiff was extremely weak. Worse yet, Plaintiff's doctors informed her that she would require continued chemotherapy treatment.

28. In or around the end of December 2017, Plaintiff began a new chemotherapy treatment which spanned approximately four (4) weeks and comprised of weekly, five (5) hour treatments.

29. Plaintiff then, through her doctor, made a request pursuant to the ADA that her medical leave be extended to approximately April 2, 2018, due to her need for continued

chemotherapy. Plaintiff's doctor was hopeful that Plaintiff could return to work sooner than that date but requested she be granted leave until April 2, 2018, to give a cautious estimate as to the time she would require. Defendants' advised that she would be permitted leave until January 25, 2018.

30. During Plaintiff's unpaid medical leave she had no source of income and fell behind on her rent. In or around January 2018, Plaintiff was served with an eviction notice. Plaintiff was desperate to return to work but still too weak to do so and needed more time to recover from treatment.

31. By then end of January 2018, Plaintiff was not fully recovered and needed additional time before she was able to return to work. However, Plaintiff's doctor was optimistic that she could indeed return to work before April 2, 2018. Plaintiff's doctor submitted another ADA request on her behalf to Defendant A&A clarifying that Plaintiff would be fit to return to work by the end of February 2018.

32. However, on February 2, 2018, without warning, Plaintiff received a letter (the "February 2, 2018 Letter") which stated in relevant part, "Unfortunately effective today February 2, 2018 we will no longer be able to continue to hold your position and as a result your employment with A&A Maintenance will be terminated."

33. Plaintiff was extremely distressed that her employment had been terminated at a time when she was most desperate for a job, particularly when she required only a small amount of additional time for recovery.

34. Plaintiff had been employed as a janitor at LIU for nearly 12 years and was in shock when Defendant A&A informed her she was being terminated after receiving her cancer diagnosis.

35. Soon after receiving the February 2, 2018 Letter, Plaintiff contacted Saily Castro ("Ms. Castro"), from Defendant A&A's Human Resources Department ("HR"). She told Plaintiff she would look into the situation and assured Plaintiff she would get back to her shortly.

36. 2 days after Plaintiff's conversation with Ms. Castro, Defendant CRUZ contacted Plaintiff and stated that the February 2, 2018 Letter was a mistake and apologized for it. He advised that Plaintiff could return to work on February 26, 2018, and stated that he looked forward to seeing her then. Delia DeJesus ("Ms. DeJesus"), another Defendant A&A HR employee, contacted Plaintiff by phone as well and apologized with regards to the February 2, 2018 Letter. She assured Plaintiff that nothing would happen to her job and that her employment was still "intact."

37. Before returning to work, Plaintiff informed Ms. Castro that she was advised by her doctor not to lift anything greater than fifty (50) pounds. Plaintiff's requested accommodation was clearly reasonable and did not present an undue burden for Defendants since never before had Plaintiff been required to lift more than fifty (50) pounds while employed by Defendant A&A. Ms. Castro told Plaintiff to bring in a note from a doctor explaining the request when she reported to work.

38. On or about February 23, 2018, prior to Plaintiff's expected return date, Plaintiff brought a note from Dr. Sonoda, her physician, as instructed by Ms. Castro, which explained that she could not lift any very heavy objects. At that time, Plaintiff also met with Defendant CRUZ to ask if it was possible that she work from approximately 3:00pm until 11:00pm, instead of her usual hours—approximately 6:00pm to 2:30am. Specifically, she explained that it took far more time (over 2 hours) for her to commute home after 2:00am and that it

would be a help if she only had to work until 11:00pm. Defendant CRUZ responded that Plaintiff's request would easily be granted. Plaintiff was optimistic that she would have a smooth return to work, however, Defendant CRUZ soon revealed that his intention was only to terminate Plaintiff.

39. On or about February 26, 2018, Defendant CRUZ called Plaintiff on the phone and she immediately recognized that the tone in his voice was very different from when they had spoken a few days prior. He told her plainly, **"There is no job for you and we cannot accommodate you. If you're coming back, you need to be at full capacity."**

40. Plaintiff was devastated and immediately requested a revised letter from Dr. Sonoda, which she brought directly to Defendant CRUZ. The new letter specified that Plaintiff could return to work but that she shouldn't over exert herself by lifting very heavy objects. Defendant CRUZ replied that he was "not satisfied" with the second letter and instructed Plaintiff to, "take some time off, get better, and then come back to work." Plaintiff asked how she knew her job would still be there for her and whether Defendant CRUZ would put in writing that she was being granted an extended leave. **Defendant CRUZ refused.** Plaintiff responded that it would appear like she was abandoning her position if she simply stopped coming to work without a leave approval from Defendant CRUZ or Defendant A&A. Plaintiff was extremely anxious that Defendant CRUZ was attempting to create a pretense to terminate her.

41. On or about February 27, 2018, Plaintiff obtained yet another letter from Dr. Sonoda which stated that she could come back to work at full capacity but should be cautious about lifting anything very heavy. Plaintiff's doctor faxed the letter to Defendant A&A. Plaintiff then brought the letter to the School to give to Defendant CRUZ directly but he would not meet

7

with her and she instead met with "Tony," another Defendant A&A supervisor. Tony took Plaintiff's note and told her she could report to work.

42. Later that day, Mr. Davis, Plaintiff's other supervisor, informed Plaintiff that she would be able to work, but must work the 6:00pm to 3:00am shift, as opposed to 3:00pm to 11:00pm, which she originally requested.

43. Then, on or about February 28, 2018, Mr. Davis called Plaintiff into his office and confronted her with a written warning due to toilet paper being found on the floor of a bathroom along with a photograph of the toilet paper on a bathroom floor. Plaintiff was in disbelief that she was receiving formal discipline as it was obvious to her that the written warning was simply a measure of retaliation for the accommodations she requested due to her disability. In Plaintiff's more than 10 years working as janitorial staff at LIU, she had never before been disciplined for there being toilet paper on a bathroom floor. Defendant CRUZ had already made it clear that he did not want to be bothered by Plaintiff's needs resulting from her cancer. Further, she was sure that she didn't leave toilet paper on the floor as they accused. She had cleaned the bathroom in question during the early morning hours of her prior shift. They approached her later the following day and indeed confirmed that the picture they had was taken later in the afternoon. Plaintiff believed that her employment was being sabotaged.

44. Plaintiff worked through the remainder of February 2018 feeling as if she was on thin ice, and that Defendants were looking for a reason to terminate her.

45. On or about March 13, 2018, Plaintiff felt very weak so she called Dr. Sonoda who instructed her to come in for a visit the same day. However, as Plaintiff was anxious about her job, she told her doctor she would try to make arrangements to come in the following

day. Plaintiff first obtained permission from Clyde Cross, her Nighttime Supervisor. She also called Mr. Davis to confirm that she could take a sick day to go to the hospital the following day. Mr. Davis confirmed that she could use her sick day.

46. On or about March 16, 2018, Plaintiff learned from her former coworkers, "Ramon" and "Devon" that Mr. Cross was questioning them about Plaintiff's health condition and in so doing, disclosed confidential medical information about Plaintiff's disabilities.

47. Shortly thereafter, to Plaintiff's shock, Mr. Davis called her to meet by an area where garbage is kept behind dormitories at the School, which Plaintiff found to be a very odd location for a meeting. Mr. Cross, the "Nighttime Supervisor," was also present. First Mr. Davis informed Plaintiff that Defendants would maintain Plaintiff's 6:00pm to 3:00am shifts, despite Plaintiff's request. Then, to Plaintiff's complete surprise, Defendant CRUZ informed Plaintiff that he was suspending Plaintiff for "insubordination," accusing her of having taken a lunch break without obtaining permission from Mr. Cross. Plaintiff protested that she wasn't insubordinate as they alleged but Mr. Davis insisted that she go home for the day and that she had to "learn her lesson."

48. Plaintiff quickly called Ms. DeJesus and complained that she believed she had only received the suspension in retaliation for her requests for accommodations. She expressed to Ms. DeJesus that Defendant CRUZ was angry about having to consider her needs to due to her cancer diagnosis and was punishing her for it. Plaintiff asked if it was really necessary that she leave that day and Ms. DeJesus responded that if she was told to leave, that she has to leave. Plaintiff then told her that she was going to put a complaint in writing but Ms. DeJesus told her to "be careful" about writing a letter. Plaintiff was shocked to hear a Defendant A&A HR representative trying to dissuade her from making a complaint.

       She was beginning to feel hopeless.  Before Plaintiff left that day, Defendant CRUZ told her that when she returned the following Monday, her hours were going to be 6pm to 2:30am.

49. On or about March 19, 2018, when Plaintiff returned to work at 6pm as instructed by Defendant CRUZ, she was reprimanded for arriving to work late. Plaintiff was not informed, due to her suspension, that when she returned to work on March 19, 2018, students at the School were on spring break and therefore, employees of Defendant A&A were instructed to arrive to work early – at 3pm.

50. Plaintiff continued to feel that Defendants we're trying to set up a reason to terminate her, not related to her disability, even though it was obvious that Defendant CRUZ and Mr. Davis simply didn't want to deal with a disabled employee.

51. On or about March 21, 2018, Plaintiff again felt very sick and obtained permission from Mr. Davis to have a sick day.  Plaintiff was quickly hospitalized and had to undergo further surgery on March 23, 2018.  Throughout Plaintiff's hospitalizations, she always kept her employer apprised of her condition.

52. On or about March 26, 2018, at Plaintiff's request, Dr. Sonoda faxed a letter to Defendants, informing of Plaintiff's condition and that she was still hospitalized.

53. Then, later that day on March 26, 2018, Plaintiff called Mr. Davis and left him a voicemail to tell him that she would come to his office later that day to give him a doctor's note.  Mr. Davis returned Plaintiff's call **and informed her that she was being terminated while she was still hospitalized.  Mr. Davis stated, "If you're planning to come back to work, don't.  Get in touch with your union delegate or call HR because you can't come back."**

54. Plaintiff did contact HR and her union by phone and left voicemails when her calls were not answered. Since neither HR nor Plaintiff's union returned Plaintiff's calls, she appeared at her union delegate's office in person to file a grievance.

55. Plaintiff's union declined to arbitrate Plaintiff's claim of discrimination.

56. **But for the fact that Plaintiff is disabled and requested an accommodation under the ADA, Defendants would not have terminated Plaintiff's employment**.

57. **Defendants failed to grant the reasonable accommodations Plaintiff requested and instead retaliated against her for exercising her rights under the ADA**.

58. **Defendants retaliated against Plaintiff due to her complaint of disability discrimination**.

59. Plaintiff is a qualified individual who can perform the essential functions of her employment with a reasonable accommodation as defined by § 12111(8) of the ADA.

60. The reasonable accommodation Plaintiff requested was a finite extension of her approved leave to recover from her cancer treatment.

61. Plaintiff's disability, cancer, is a physical impairment which substantially limits one or more of her major life activities within the meaning of § 12102(1)(A) of the ADA, including but not limited to, her ability to consume food and dispose of bodily waste. Plaintiff's disability also places her body in a weakened state.

62. The aforementioned are only some of the discriminatory acts to which Plaintiff was subjected on the basis of her disability (cancer.)

63. Plaintiff was subjected to unlawful discrimination, humiliation, degradation and belittlement at the hands of Defendants, and as a result, suffers loss of rights, emotional distress, loss of income, earnings and physical injury.

64. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

65. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, commission and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

66. Defendants' conduct has been malicious, willful, outrageous and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages as against Defendants.

**AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE AMERICANS WITH DISABILITIES ACT
(Not Against Individual Defendant)**

67. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

68. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

69. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

70. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff by refusing to grant Plaintiff reasonable accommodations which she requested, and ultimately terminating her employment due to her disability (cancer).

71. As such, Plaintiff has been damaged as set forth herein.

### AS A SECOND CAUSE OF ACTION FOR RETALIATION
### UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendant)

72. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

73. The ADA prohibits retaliation, interference, coercion, or intimidation.

74. 42 U.S.C. § 12203 provides:

   i. Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
   ii. Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

75. Defendant engaged in an unlawful discriminatory practice by retaliating against Plaintiff, for engaging in a protected activity, by terminating Plaintiff.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK STATE EXECUTIVE LAW
### (Against Both Defendants)

76. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

77. The New York State Executive Law § 296(1)(a) provides that, "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate

against such individual in compensation or in terms, conditions or privileges of employment."

78. Defendants engaged in an unlawful discriminatory practice in violation of the New York State Executive Law § 296(1)(a) by creating and maintaining discriminatory working conditions, denying Plaintiff's request for a reasonable accommodation due to her disability (cancer), and ultimately terminating Plaintiff's employment because of her disabilities.

### AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK STATE EXECUTIVE LAW (Against Both Defendants)

79. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

80. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

81. Defendants have engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's engagement in an activity protected under this law.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW (Against Individual Defendant Only)

82. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

83. New York State Executive Law § 296(6) provides that it shall be an unlawful

discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so."

84. Defendant CRUZ engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296 by aiding, abetting, inciting, compelling, and coercing the discriminatory and retaliatory conduct complained of herein.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

86. The Administrative Code of the City of New York § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

87. The Defendants violated the section cited herein.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Against Individual Defendant)

88. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

89. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

90. Defendant CRUZ engaged in an unlawful discriminatory practice in violation of New York

City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS AN EIGHTH CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

91. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

92. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

93. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Not Against Individual Defendant)

94. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

95. The New York City Administrative Code § 8-107(13) states: "Employer liability for discriminatory conduct by employee, agent or independent contractor" provides:

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of

        this section only where:

            i. the employee or agent exercised managerial or supervisory responsibility; or

            ii. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

            iii. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

96. Defendant violated the section cited herein as set forth.

## JURY DEMAND

97. Plaintiff requests a jury trial.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the

17

Americans with Disabilities Act, the New York State Executive Law, and the New York City Administrative Code, in that Defendants discriminated against Plaintiff on the basis of her disability and in retaliation for engaging in a protected activity – complaining of discrimination and requesting a reasonable accommodation, resulting in her unlawful termination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
October 17, 2018

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: _____
Steven Fingerhut, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
sfingerhut@tpglaws.com